UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YING LIN,<br><br>              Plaintiff,<br><br>       -against-<br><br>DISCOVER BANK; TRANS UNION LLC a/k/a TRANSUNION; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES LLC;<br><br>             Defendants. | Civil Action<br>Case No.: 1:25-cv-01541<br><br>**COMPLAINT** |

Plaintiff Ying Lin ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.     Plaintiff brings this action for damages arising under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*) and its implementing Regulation V (12 C.F.R. Part 1022), the Truth in Lending Act (15 U.S.C. § 1643), and the Fair Credit Billing Act (15 U.S.C. § 1666, *et seq.*), resulting from Defendants' willful and ongoing violations of consumer credit protection laws, including failure to investigate and correct inaccurate credit reporting resulting from identity theft, and unlawful attempts to collect on a fraudulent debt.

2.     Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information [...]" 15 U.S.C. § 1681.

3.      Thus, because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," Congress determined that the protections of the FCRA were necessary "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See id.*

4.      The FCRA also imposes a duty upon the furnishers of information to consumer reporting agencies to provide accurate information relating to consumers, and to correct and update any consumer information the furnisher determines is incomplete or inaccurate. *See* 15 U.S.C. § 1681s-2.

5.      Despite Defendants' "grave responsibilities" to ensure the accuracy and proper utilization of Plaintiff's credit information, Defendants ignored Plaintiff's pleas for help and instead further perpetuated the damage caused by the identity theft, causing Plaintiff to suffer increased and ongoing credit damage, a wrongfully imposed debt nearing collections, the dissemination of personally damaging information, and other damages.

6.      Unbeknownst to Plaintiff, an identity thief stole her personal information and used this information to create a credit card under her name. By the time Plaintiff discovered she was a victim of identity theft, the thief had already used Plaintiff's information to create an account with fraudulent, illegal, and unauthorized purchases totaling roughly $27,775.00.

7.      Although Plaintiff took every possible measure to report the fraud and restore her good credit, the Defendants failed and refused to investigate or correct the errors, and continued furnishing and reporting inaccurate information, and attributing the fraudulent charges to Plaintiff.

## PARTIES

8.    Plaintiff is an individual residing in the State of New York, County of Kings, with an address at 2670 East 29th Street, Brooklyn, New York 11235.

9.    Defendant Discover Bank, N.A. ("Discover Bank") is a national banking association organized under the laws of the United States, with its principal place of business at 502 E. Market Street, Greenwood, Delaware 19950. Discover Bank is one of the largest financial institutions in the United States.

10.    Defendant Trans Union LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 6066. The company is also known as "TransUnion" and shall be referred to as such herein. TransUnion is one of the three national credit reporting agencies ("CRAs") recognized by the Federal Trade Commission ("FTC").

11.    Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized under the laws of the State of Ohio, with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian is a wholly owned subsidiary of Experian Holdings, Inc. Experian is one of the three national CRAs recognized by the FTC.

12.    Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a wholly owned subsidiary of Equifax Inc. Equifax is one of the three national CRAs recognized by the FTC.[1]

---

[1] TransUnion, Experian and Equifax shall be referred collectively herein as the "CRAs".

## JURISDICTION

13.     This Court has jurisdiction pursuant to 28 U.S.C § 1331, as Plaintiff's claims substantially arise under federal law.

14.     Venue in this district is proper pursuant to 28 U.S.C § 1339(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiff resides in this district.

## STATEMENT OF FACTS

15.     Plaintiff moved to the United States of America from China in November of 2003 with her son, hoping to achieve a better financial and social future for their family. After years of hard work, in May of 2007, she became an American Citizen, marking the beginning of what would become her American Dream.

16.     On May 27, 2023, Plaintiff was a victim of identity theft. A fraudulent credit card was opened in her name with Discover Bank, under the account number 601100****, without her authorization or knowledge. Plaintiff did not consent to the opening of this account, nor did she apply for or use any services from Discover Bank.

17.     The Language Access Service section on Discover Bank's website states that telephone services for new credit card accounts are provided in English only. Written communications are available only in Spanish translation as an additional language. Plaintiff does not speak English fluently, nor does she speak Spanish, making it impossible for her to effectively communicate with the bank to inquire about obtaining a credit card.

Discover offers the following telephone language access services:

| | New Accounts | Customer Service | Collections |
|---|---|---|---|
| Credit Cards[1] | English | English and Spanish | English and Spanish<br>Additional Languages Via Interpretation Service |
| Personal Loans | English and Spanish<br>Additional Languages Via Interpretation Service[2] | English and Additional Languages Via Interpretation Service | English and Additional Languages Via Interpretation Service |
| Student Loans | English | English | English |
| Home Loans | English | English and Spanish | English and Spanish |
| Deposits | English | English | N/A |

[1]Small business card (DIBC) services are in English only

Discover provides select written communications in Spanish translation only.

18.     As is expected from this line of criminal activity, after the credit card was issued, the identity thief never made any payments on the credit card, and it soon began to be reflected on Plaintiff's credit reports.

19.     The negative mark on the credit report appears across all CRAs. This negative entry is impacting on her credit score, contributing to a decrease in their overall rating. The presence of this mark across all CRAs is a significant factor in lowering the credit score.



Payment history by Equifax. **Exhibit A**



Payment history by Transunion. **Exhibit B**



Payment history by Experian. **Exhibit C**

20.     On all credit reports issued by CRAs, the account is marked as "Charge Off". This status indicates that the account has been handed over to a collection agency, which negatively affects Plaintiff's credit standing and score, as well as create a fear of being reached out to by collection agencies on a debt that has nothing to do with her.

21.     These "Charge-Off" remarks are a defining contrast when compared to all of Plaintiff's own accounts, which Experian describe as "Never late" with "Exceptional payment history", TransUnion as "Paid or paying as agreed" and Equifax as "Pays account as agreed". *See* **Exhibit A, Exhibit B, Exhibit C.**

22.     Similarly, and despite Plaintiff's pristine credit history, her credit score is "below the average score of U.S. consumers" according to all CRAs, who also agree that her score is being hurt due to details that are exclusively consistent with the wrongfully opened account furnished by Discover Bank.

**What's hurting**

− **Serious delinquency**
- You have a serious delinquency (60 days past due or greater) or derogatory indicator on your credit report.
- Number of your accounts that were ever 60 days late or worse or have a derogatory indicator: 1 account
- Virtually no FICO High Achievers have a 60 days late payment or worse listed on their credit report.
- The presence of a serious delinquency or derogatory indicator is a highly correlated predictor of future payment risk. People with previous late payments are more likely to pay late in the future. As these items age, they will have less impact on the FICO® Score. Most late payments stay on your report for no more than seven years.

− **High credit usage**

- You've made heavy use of your available revolving credit.
- Ratio of your revolving balances to your credit limits: 103%
- For FICO High Achievers, the average ratio of the revolving account balances to credit limits is less than 7%.
- The FICO® Score evaluates balances in relation to available credit on revolving accounts. The extent of a person's credit usage is one of the most important factors considered by a FICO® Score. People who keep their ratio of balances to credit limits lower are generally considered less risky to lenders than those with higher ratios. Note, consolidating or moving debt from one account to another will usually not change the total amount owed.

− **Few accounts paid on time**
- You have an insufficient number of accounts that are currently paid as agreed.
- Number of your accounts currently being paid as agreed: 3 accounts
- FICO High Achievers have an average of 6 accounts currently being paid as agreed.
- The FICO® Score considers the number of accounts showing on time payments. Generally, the higher the number reported the lower the risk. Compared to other people with a similar age of credit history, the number of accounts you have that are currently paid as agreed is low.

− **Amount past due**
- You have past due amounts on your accounts.
- Total amount past due on all of your accounts: $25,775
- Virtually no FICO High Achievers have any amounts past due.
- The FICO® Score considers the amounts past due on your accounts and your FICO® Score was lowered due to the amounts past due reported. Generally, the greater the amount that is past due, the greater the risk to lenders.

23.     According to Experian's own records, an inquiry was made on the 25th of June, 2024 by JP Morgan Chase Bank regarding a potential credit card. During this inquiry, Experian disseminated wrongful information regarding Plaintiff's credit history to a third party, and Plaintiff was subsequently denied from said credit card.

24.     Plaintiff does not speak English fluently. Due to this language barrier, she has faced significant difficulty in understanding and communicating with Discover Bank about the fraudulent account. This left her feeling helpless and unable to resolve the issue on her own.

25.     Plaintiff's son, recognizing his mother's struggle with English, communicated with Discover Bank on her behalf to explain the situation. He informed the bank representatives that his mother does not speak English well and asked for accommodations to ensure that they would communicate with her more effectively, positive that this struggle could easily be resolved.

26.     Despite these efforts, Discover Bank did not make any real attempt to accommodate Plaintiff's language and age needs, nor did they take appropriate steps to ensure accurate communication with her. The lack of assistance in overcoming this language barrier further compounded Plaintiff's frustration and confusion.

27.     On multiple occasions, Plaintiff made efforts to inform Discover Bank that the account in question was fraudulent. Despite her clear statements, Discover Bank continued to push her to pay the debt that was not hers, disregarding her claims of identity theft.

28.     Over telephone communication, Plaintiff stated that the address Discover Bank claimed was hers, and which was used to open the credit card, did not belong to her and that she did not recognize it. She then provided her actual address: 2670 East 29th Street, Brooklyn, New York 11235. Instead of investigating the fraudulent opening of the account under the unrecognized

address, Discover Bank updated the account to the Plaintiff's correct address and later used this update to deny her claims.

29.     Despite Plaintiff's attempts to communicate that the account was fraudulent, Discover Bank began sending her letters demanding payment for the debt. These letters continued to arrive, further exacerbating the situation and causing Plaintiff significant emotional distress.

30.     One of the communications Plaintiff received provided an estimate regarding the status and satisfaction of the unrecognized debt. It stated that Plaintiff, who is soon to be 56 years old, would finish paying "her" debt in 88 years, making Plaintiff 144 years old at the proposed time of satisfaction. The estimate also included a minimum monthly payment of $3,953.98, with a total payment of $305,784.

## Payment Information

| New Balance | Minimum Payment* | Payment Due Date |
|---|---|---|
| $25,775.70 | $3,935.98 | 07/12/2024 |

* Includes past due amount of $3419.98

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $41.00.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 88 years | $305,784 |

If you would like information about credit counseling services, call us at 1-800-347-1121.

31. Plaintiff's frustration grew as she found herself overwhelmed by the constant pressure to pay for an account she never opened. The harassment from Discover Bank, coupled with the ongoing debt collection letters, left her feeling defeated and anxious. She became extremely upset, to the point where it significantly impacted her mental well-being. The stress caused by the situation even disrupted her ability to sleep, as she could not escape the constant worry of dealing with the fraudulent debt after she had come into the country to build a better life for herself and her family.

32. Plaintiff has continued to struggle with this issue, trying desperately to resolve it, but the continued demands for payment and the inability to communicate effectively due to her language barrier have left her in a prolonged state of distress. The emotional toll has been severe, affecting her overall quality of life.

33. This ongoing nightmare of having to deal with fraudulent activity on her credit files, the constant pressure from Discover Bank to pay a debt she does not owe, and the difficulty in communicating due to her language barrier has caused significant emotional harm to the Plaintiff, disrupting her peace of mind and daily life.

34. After multiple attempts to contact Discover Bank, in an effort to resolve her situation, Plaintiff sent a formal notice of dispute to the CRAs, asserting that the credit card was not hers. *See* **Exhibit D**. Despite this, Discovery Bank failed to respond to her request, leaving her situation unresolved and her credit report impacted negatively.

### VIOLATIONS OF THE FCRA
**(15 U.S.C. § 1681,** *et seq.***)**

35. Plaintiff incorporated by reference each of the preceding paragraphs as though fully set forth herein.

36. Plaintiff is a "consumer" as defined by the FCRA. *See* 15 U.S.C § 1681a(c).

37.     Discover Bank is a "furnisher" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C § 1681s-2, including providing accurate information relating to consumers.

38.     Discover Bank is also a "person" as defined by the FCRA. *See* 15 U.S.C. § 1681a(b).

39.     Subpart E of Regulation V, the FCRA's implementing regulation, applies to furnishers of information, including Discover Bank. *See* 12 C.F.R. §§ 1022.1, 1022.40.

40.     Each of the CRAs is a "consumer reporting agency" or "CRA" as defined by the FCRA. *See* 15 U.S.C. § 1681a(f).

41.     The CRAs individually qualify as a "consumer reporting agency that compiles and maintains files in consumers on a nationwide basis," as defined by the FCRA. *See* 15 U.S.C. §1681a(p).

## COUNT I
### Willful Reporting of Inaccurate Information to Consumer Reporting Agencies
### (15 U.S.C. §§ 1681s-2, 1681n)
### *AS TO DISCOVER BANK*

42.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43.     The FCRA prohibits furnishers from reporting information to a CRA "with actual knowledge of errors" and "after notice and confirmation of errors." *See* 15 U.S.C. § 1681s-2(a)(1).

44.     Specifically, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(A). "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely

allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

45.    Regulation V provides that "[e]ach furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency," and "review its policies and procedures required by this section periodically and update them as necessary to ensure their continued effectiveness." *See* 12 C.F.R. § 1022.42.

46.    Regulation V defines "accuracy" as:

> [I]nformation that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer [that] correctly: (1) [r]eflects the terms of and liability for the account or other relationship; (2) [r]eflects the consumer's performance and other conduct with respect to the account or other relationship; and (3) [i]dentifies the appropriate consumer.

12 C.F.R. § 1022.41(a).

47.    Additionally, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if -- (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(B).

48.    "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3).

49.    Upon receipt of notice of a dispute regarding the completeness or accuracy of information provided to a CRA under 15 U.S.C. § 1681i(a)(2), a furnisher of the disputed information must conduct a timely investigation and correct and discontinue any inaccurate reporting. *See* 15 U.S.C. § 1681s-2(b).

50.    A furnisher who receives an identity theft report from a consumer is also prohibited from furnishing information to a CRA that is the result of such identity theft. *See* 15 U.S.C. § 1681s-2(a)(6)(B).

51.    Plaintiff disputed the fraudulent charges directly to Discover Bank, and in the Notice of Dispute sent to the CRAs. Plaintiff also filed an identity theft report with the FTC, which was included with the Notice of Dispute.

52.    Upon information and belief, Discover Bank received notice of Plaintiff's Notice of Dispute regarding the accuracy of information furnished to the CRAs concerning her fraudulently opened credit card. Upon further information and belief, Discover Bank also received the received the identity theft report Plaintiff filed with the FTC and included with the Notice of Dispute.

53.    Discover Bank failed to review the information provided by Plaintiff in connection with the Notice of Dispute and failed to contact Plaintiff for any additional information. Discover Bank also deliberately failed and refused to conduct a proper or timely investigation of Plaintiff's dispute, or to correct the disputed information.

54.    Discover Bank reported inaccurate account information regarding Plaintiff's fraudulently opened credit card to the CRAs, without notice that the information was disputed, which was then incorporated into Plaintiff's report issued by the CRAs that was the result of identity theft.

55.    The inaccurate information included: (i) attributing the debt and responsibility for the fraudulent charges to Plaintiff; (ii) misrepresenting the account balances by including the disputed, fraudulently opened credit card, and the related improper fees and interest; and (iii) reporting the account as past due as a result of the identity theft.

56.    Discover Bank has continued inaccurately reporting information to the CRAs regarding Plaintiff's fraudulently opened credit card in violation of 15 U.S.C § 1681s-2.

57.    Discover Bank's deliberate and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's account has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and prevention of any potential collection action arising from the fraudulently opened credit card, emotional distress, and other actual damages.

58.    As a result of Discover Bank's willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs to prevent any potential collection action arising from the fraudulently opened credit card; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

<div align="center">

**COUNT II**
**Negligent Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681o)**
*AS TO DISCOVER BANK*

</div>

59.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

60.    Upon information and belief, Discover Bank furnished inaccurate information regarding Plaintiff's fraudulently opened credit card to the CRAs, which was incorporated into Plaintiff's credit file and credit reports.

61.    As party to the applicable account agreement, and compiler and furnisher of information concerning the fraudulently opened credit card, Discover Bank had a duty to ensure

Plaintiff's account history and information was accurately recorded and maintained, and to ensure the accuracy of any such information furnished to the CRAs.

62.     Upon information and belief, after multiple attempts at telephone communication and receiving Plaintiff's Notice of Dispute regarding the identity theft and fraudulently opened credit card, Discover Bank thereafter negligently failed and refused to conduct any required investigation or to correct the disputed information, and have continued inaccurately furnishing information to the CRAs regarding the fraudulently opened credit card, including falsely representing that Plaintiff is a credit risk, in violation of 15 U.S.C. §§ 1681s-2(a)(2) and 1681s-2(a)(8).

63.     Discover Bank has further negligently persisted in reporting inaccurate information to the CRAs without providing notice that Plaintiff has disputed such information, in violation of 15 U.S.C. § 1681s-2(3).

64.     Discover Bank's negligent and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's account has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and prevention of any potential collection action arising from the fraudulently opened credit card, emotional distress, and other actual damages.

65.     As a result of Discover Bank's negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs to prevent any potential collection action arising from the

fraudulently opened credit card; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

<div align="center">

**COUNT III**
**Willful Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681n)**
*AS TO THE CRAS*

</div>

66.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

67.    The FCRA requires CRAs to block the reporting of information resulting from identity theft when notified by the consumer:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

68.    The CRAs are further required to notify the furnisher of such information "(1) that the information may be a result of identity theft; (2) that an identity theft report has been filed; (3) that a block has been requested under this section; and (4) of the effective dates of the block." 15 U.S.C. § 1681c-2(b).

69.    If a CRA declines to block, or rescinds a block, of information resulting from identity theft, it must promptly notify the consumer "in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title." *See* 15 U.S.C. § 1681c-2(c).

70.    On January 24, 2025, Plaintiff mailed copies of the Notice of Dispute addressed to the CRAs, via certified mail. *See* Ex. A.

71.     The Notice of Dispute included all information and documentation required for an identity theft block under 15 U.S.C. § 1681c-2(a). *See* Ex. A.

72.     Accordingly, within four (4) business days of the receipt of the Notice of Dispute, each of the CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft.

73.     Upon information and belief, the CRAs deliberately failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

74.     Upon information and belief, the CRAs further willfully declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

75.     The CRAs' willful failure to block the reporting information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress and other actual damages.

76.     As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

### COUNT IV
**Negligent Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681o)**
*AS TO THE CRAS*

77.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

78.    Upon receipt of the Notice of Dispute, each of the CRAs was obligated and required to block the reporting information in Plaintiff's credit file resulting from the identity theft.

79.    Upon information and belief, the CRAs negligently failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

80.    Upon information and belief, the CRAs further negligently declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

81.    The CRAs' negligent failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

82.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

## <u>COUNT V</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681n)**
*AS TO THE CRAS*

83.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

84.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

85.    The CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

86.    Despite receipt of the foregoing, the CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff's fraudulently opened credit card.

87.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff or Discover Bank for any additional information that would assist in a reasonable investigation.

88.    Accordingly, the CRAs' continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

89.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

90.    As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and

incurring attorneys' fees and costs; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

<u>COUNT VI</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681n)**
*AS TO THE CRAS*

91.  Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

92.  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

93.  The CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

94.  Despite receipt of the foregoing, the CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff's fraudulently opened credit card.

95.  Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff or Discover Bank for any additional information that would assist in a reasonable investigation.

96.  Accordingly, the CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from

improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

97.     The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

98.     As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

## COUNT VII
### Negligent Failure to Assure Accuracy of Consumer Information in Credit Report
### (15 U.S.C. §§ 1681e(b), 1681o)
### *AS TO THE CRAS*

99.     Plaintiff incorporates by reference each of the preceding paragraphs as thoughtfully set forth herein.

100.    Despite receipt of evidence that Plaintiff's credit report contained inaccurate information, the CRAs failed to establish and follow reasonable procedures to promptly investigate and ensure the accuracy of reported information concerning Plaintiff's Fraudulently opened credit card.

101.    Accordingly, the CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

102.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

<u>COUNT VIII</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681n)**
*AS TO THE CRAS*

103.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

104.    "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A).

105.    This investigation must be completed within thirty (30) days of the CRA's receipt of notice of the dispute. *See id.*

106.    The CRA must also provide notice of the dispute to any furnisher of the disputed information, within five (5) business days of receipt.

107.    "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

108.    Within five (5) business days of completing a reinvestigation, a CRA must provide the consumer with written notice of the results and additional statutory notices.

109.    Upon receipt of Plaintiff's Notice of Dispute, the CRAs deliberately failed and refused to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's fraudulently opened credit card.

110.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit file was inaccurate, the CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

111.    Upon information and belief, the CRAs deliberately failed to provide notice of Plaintiff's disputes to Discover Bank, as required under 15 U.S.C. § 1681i(a)(2).

112.    Upon information and belief, the CRAs also failed to provide Plaintiff with written notice of the results of the investigation, or any of the additional required statutory notices, in violation of 15 U.S.C. § 1681i.

113.    The CRAs further deliberately failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

114.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files was malicious, intentional, reckless, and willful.

115.    As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

### COUNT IX
**Negligent Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681o)**
*AS TO THE CRAS*

116.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

117.    Upon receipt of Plaintiff's Notice of Dispute, the CRAs had a duty to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's Fraudulently opened credit card.

118.    The CRAs failed to investigate Plaintiff's dispute or to properly consider the information Plaintiff submitted in connection with the dispute, and further failed and refused to contact Plaintiff, or Discover Bank, for any additional information that would assist in a reasonable investigation.

119.    The further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, or to provide Plaintiff with written notice of the results and additional required statutory notices, in violation of 15 U.S.C. § 1681i.

120.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files, and failure to correct inaccurate and damaging credit information contained in Plaintiff's credit file, has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial

burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

121.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

<div align="center">

**COUNT X**
**Liability of Holder of Credit Card**
**(Truth in Lending Act, 15 U.S.C. § 1643)**
*As To Discover Bank*

</div>

122.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

123.    Pursuant to 15 U.S.C § 1643(a)(1), the liability of a credit card holder for unauthorized use of a credit card shall not exceed $50 if:

a.    The unauthorized use occurs before the issuer is notified of the loss, theft, or unauthorized use occurs before the issuer is notified of the loss, theft, or unauthorized use of the card; and

b.    The issuer provides the necessary disclosures and notices under § 1643(a)(2).

124.    "Unauthorized use" is defined under 15 U.S.C § 1602(p) as the use of a credit card by a person other than the cardholder without actual, implied or apparent authority.

125.    Upon notification of unauthorized use by Plaintiff, the issuers of the fraudulently opened credit card were obligated under 15 U.S.C. § 1643(b) to:

a.    Investigate Plaintiff's claims of unauthorized use.

  b. Limit Plaintiff's liability to $50 per account.

  c. Take prompt action to reverse unauthorized charges or payments tied to the disputed account.

126. The issuer failed to fulfill their obligations under 15 U.S.C. § 1643 by:

127. As a result of Discover Bank's failure to comply with their statutory obligations under the Truth in Lending Act, Plaintiff has suffered damages, including but not limited to: (a) financial harm caused by the issuers' refusal to reverse unauthorized charges; (b) emotional distress stemming from continued harassment and collection efforts by the issuers; (c) damage to Plaintiff's credit score and reputation; (d) payment of attorneys' fees and other costs incurred to dispute the fraudulently opened credit card.

128. Discover Bank acted willfully or negligently in violation of 15 U.S.C. § 1643, by continuing to demand payment for an unauthorized account and failing to comply with statutory limitations on liability.

129. As a result of Discover Bank's foregoing conduct in violation of 15 U.S.C. § 1643, Plaintiff has suffered damages including loss and reduction of credit, increased debt, and higher interest rates and unfavorable terms on any available credit options, payments of attorneys' fees and other costs to retain professionals to assist with credit recovery and prevention of any potential collection action arising from the fraudulently opened credit card, and other actual damages.

<div align="center">

**COUNT XI**
**Failure to Investigate and Resolve Consumer Dispute**
**(Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.*)**
***AS TO THE DEFENDANTS***

</div>

130. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

131.    Pursuant to the Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA"), if a consumer disputes any item of information contained in their credit file or billing statement, and such dispute is directly conveyed to the creditor or consumer reporting agency, the creditor or consumer reporting agency must promptly investigate the dispute review the information provided, and correct any inaccuracies or errors, unless the dispute is deemed frivolous or irrelevant.

132.    Specifically, if after conducting the re-investigation, the creditor or consumer reporting agency cannot verify the disputed information, or confirm an error, the creditor or reporting agency must:

    a.    Promptly expunge the erroneous item and otherwise correct the file.

    b.    Refrain from reporting the disputed item in subsequent consumer reports.

    c.    Clearly and conspicuously disclose to the consumer their rights, including their right to request a notification of the outcome of the investigation.

133.    In addition, the FCBA mandates that, if any item disputed and reinvestigated is found to be in error or cannot be verified, the creditor or consumer reporting agency must promptly provide the consumer with a corrected copy of the credit report or billing statement, reflecting the changes, at no charge to the consumer.

134.    Upon receiving Plaintiff's Notice of Dispute regarding the fraudulently opened credit card opened under her name, Discover Bank and the CRAs were obligated to investigate Plaintiff's claims, notify Plaintiff of the results of the investigation, and fulfill any additional requirements of the FCBA.

135.    Despite receiving Plaintiff's Notice of Dispute, Discover Bank and the CRAs failed to undertake any meaningful investigation into Plaintiff's claims, failed review the information

provided in connection with the dispute and failed to correct the fraudulent or inaccurate information contained in Plaintiff's credit file.

136.    Furthermore, Discover Bank and the CRAs failed to notify Plaintiff of the results of their investigation, as no such investigation ever occurred.

137.    As a result of Defendants' conduct, Plaintiff has suffered substantial damages, including but not limited to: (a) loss and reduction of credit, (b) damage to her credit rating, (c) increased debt and financial burden from improperly imposed fees, interest and late charges, (d) the cost of hiring professionals, including attorneys, to assist with credit recovery and prevent any action arising from collections from the fraudulently opened credit card, (e) emotional distress and harm to her reputation; and (f) other actual damages resulting from the improper handling of her case.

138.    As a result of the Defendants' conduct, in violation of the FCBA, Plaintiff is entitled to damages including (a) actual damages, including attorney fees incurred to defend against unlawful civil actions and to recover from the fraudulent activity; (b) statutory damages; (c) punitive damages due to the reckless and unlawful conduct of Discover Bank; and (d) attorneys' fees and costs incurred.

139.    Discover Bank and the CRAs are further liable to Plaintiff under the FCBA for damages including actual damage suffered as a result of their failure to properly investigate and resolve Plaintiff's dispute; and attorneys' fees and costs incurred in connection with this action.

## **DEMAND FOR JURY TRIAL**

140.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, recovery of attorneys' fees and costs, and any other relief available pursuant to applicable law.

Dated: Brooklyn, New York
      March 20, 2025

<div style="margin-left:40%">

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Ying Lin

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com

</div>